IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 03-cv-02235-PSF-PAC

LEXICO RESOURCES INTERNATIONAL CORPORATION, a Nevada corporation,

      Plaintiff,

v.

THE LAFAYETTE LIFE INSURANCE COMPANY, a Delaware corporation,

      Defendant and Third-Party Plaintiff,

v.

LIVING BENEFITS OWNER TRUST, a Delaware business trust; and
DIANE SERRA, individuals,

      Third-Party Defendants.

---

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      This matter comes before the Court on Defendant The Lafayette Life Insurance

Company's Motion for Summary Judgment (Dkt. # 245), filed January 24, 2006,

together with defendant's supporting brief and exhibits labeled A-1 through A-14

("Lafayette's Motion").  Plaintiff Lexico Resources International Corporation ("Lexico")

filed its opposition to the motion on March 1, 2006 (Dkt. # 263), together with numerous

exhibits lettered A through EE.  On March 29, 2006, defendant filed its reply brief (Dkt.

# 277), together with another exhibit labeled A-15.

      This case is set for a five-day trial to the Court commencing June 26, 2006.  The

matter is ripe for determination.  The Court has determined that oral argument will not

be of assistance.

## I. BACKGROUND

Lexico filed its complaint in this case on November 7, 2003 against Defendant Lafayette Life Insurance Company ("Lafayette") and Defendant Nancy Sweet, an agent of Lafayette, alleging six claims for relief arising out of what plaintiff describes as the improper and unauthorized change by defendants of the ownership and beneficiary of a $1,000,000 life insurance policy issued by Lafayette on the life of L. Lex Dolton, a former member of Lexico's Board of Directors (Complaint at ¶¶ 6, 7 and 10). The First and Third Claims for Relief allege breach of the insurance contract and negligence as a result of the alleged unauthorized transfer of ownership and change of beneficiary. The Sixth Claim for Relief alleges a claim based on promissory estoppel. The Second, Fourth and Fifth Claims for Relief assert claims for bad faith breach of contract, negligent misrepresentation and breach of covenant of good faith, but Lexico has stated it does not intend to pursue those three claims and they should be summarily dismissed (Lexico's Opposition at 8). The complaint does not seek to rescind the transfer of the ownership of the policy or the change in the designation of beneficiary, but rather seeks damages from Lafayette for an amount damages equal to the "unpaid benefits" under the policy or damages arising from the defendant's breach of the policy terms, plus exemplary damages (Complaint at 12-13). By Order of July 12, 2004 (Dkt. # 21), the claims against Defendant Sweet were dismissed without prejudice.

On January 13, 2005, Defendant Lafayette filed a motion for leave to amend its answer and file a complaint in interpleader (Dkt. # 32). The proposed complaint in interpleader named as third-party defendants a number of individuals whom Lafayette

believed may claim an interest in the life insurance policy, and an entity called Living Benefits Financial Services, LLC, to which the ownership of the policy had been transferred in November 2001, apparently in exchange for a payment of $437,000 (*see* Opposition at 6).   On February 11, 2005, the motion for leave to file the complaint in interpleader was granted in open court by the Magistrate Judge, as was Lafayette's oral request to add two additional third-party defendants to the interpleader, Aggregate Recovery, Inc. ("Aggregate Recovery") and Ted Trauernicht (Dkt. # 35).   The interpleader complaint was filed thereafter on February 17, 2005 (Dkt. # 36).   The Court notes that the filed interpleader complaint did include Aggregate Recovery as a third-party defendant, but not Mr. Trauernicht (Dkt. # 36).   Aggregate Recovery is described as an entity asserting a right to a portion of the proceeds of the policy as a judgment creditor of Lexico (Interpleader Complaint at 12, ¶ 26).

On December 20, 2005, Aggregate Recovery filed an answer to the interpleader complaint as subsequently amended, as well as counterclaims and cross-claims, referred to by the parties as a "creditor's bill." (Dkt. # 218).   The creditor's bill alleges that Aggregate Recovery is a judgment creditor of Lexico based on two judgments it has received against Lexico in Colorado state courts, which total at least $506,000 (*id.* at 6).   The judgments remain unsatisfied.   *Id.*   Aggregate Recovery asserts essentially that it is entitled to essentially "stand in the shoes" of Lexico and derivatively assert Lexico's claims against Lafayette (*id.* at 8).

On February 1, 2006, Defendant Lafayette moved to dismiss Aggregate Recovery's creditor's bill, asserting, *inter alia*, that because the claim is entirely

4

derivative of Lexico's claims, the same grounds that it asserts entitle Lafayette to summary judgment against Lexico would also entitle it to a dismissal of the creditor's bill (Dkt. # 250). Lafayette and Aggregate Recoveries thereafter stipulated to a stay of briefing on Lafayette's motion to dismiss pending this Court's ruling on Lafayette's motion for summary judgment as to the claims of Lexico. By order of March 20, 2006, this Court granted the requested stay of briefing (Dkt. # 272).

On November 28, 2005, Lexico filed a pleading denominated "Claim in Interpleader" asserting that additional individuals Larry Alex and Diane Serra should be added as third-party defendants to the interpleader complaint (Dkt. # 203). On November 29, 2005, Lafayette moved to amend its interpleader to substitute the entity Living Benefits Owner Trust ("LBOT") as interpleader defendant in place of Living Benefits Financial Services, LLC. (Dkt. # 205).

On January 27, 2006, LBOT filed a partially unopposed motion for judgment on the pleadings as to Lafayette's interpleader complaint (Dkt. # 248), which this Court granted by order of February 22, 2006 (Dkt. # 258) after the parties had appeared before the Magistrate Judge on February 17, 2006 to clarify their positions. This Court found that none of the individuals named as third-party defendants in the Lafayette or Lexico interpleader complaints, nor Aggregate Recovery, nor Lexico, claimed an interest in the policy as the owner or beneficiary, although Aggregate Recovery claims an interest in possible proceeds of this lawsuit as a creditor of Lexico. Thus, the Court entered a judgment that LBOT is the owner and beneficiary of the policy, and no other party named in the interpleader complaint has any ownership or beneficiary interest in

5

the policy.  Accordingly the only claims remaining in this case are between Lexico and Lafayette regarding the asserted damages arising from the allegedly improper transfer of ownership and change of beneficiary.

## II. THE RELEVANT FACTS

With respect to those claims, the parties have stipulated to the following facts: On March 1, 1999, Lafayette issued a term life insurance policy for the life of L. Lex Dolton, policy number, 000 LL 0001862 (the "Policy") to Lexico as owner and beneficiary in the face amount of $1,000,000 (Final Pretrial Order (Dkt. # 252) at 10). On November 9, 2001, Lafayette changed the ownership and beneficiary designation of the Policy from Lexico to US Bank Intermediary for the Living Benefits Ownership Trust (*id*).  LBOT paid $437,000 for the Policy (*id*).

According to plaintiff, evidence shows that efforts to change the designated beneficiary of the Policy appear to have commenced in September 2000, when Third Party Defendant Paul Boghosian caused a letter to be sent to Lafayette seeking to change the Policy beneficiary so that the benefits would be paid 50% to Lexico and 50% to Hachador Holdings, Ltd., a company that Boghosian apparently controlled (*see* Exhibits H and I to Opposition).  Boghosian apparently had been asserting that as a result of a July 2000 shareholders' meeting, he had been elected to replace Charles Kohlhaas as the Chairman of the Board of Lexico (*see* Exhibit G to Opposition).  Lexico asserts in its opposition that this was a "fictitious shareholder meeting" and Mr. Kohlhaas apparently continued to assert that he was the Chairman and President of Lexico (Opposition at 2-3).

By letter dated October 16, 2000, Lafayette, through Ms. Sweet, rejected the requested change of beneficiary stating that the ownership of the Policy "has been questioned," noting that a prior change in the beneficiary designation had been made in error, and requested a resolution by Lexico's Board, and a beneficiary form "properly executed by a company employee authorized" by the corporate resolution, should Lexico desire to change the beneficiary of the Policy (*see* Exhibit J to Opposition at 2).

By letter dated November 13, 2000, Lafayette, again through Ms. Sweet, rejected a change of beneficiary designation submitted by Mr. Boghosian on October 27, 2000, although it was accompanied by a corporate resolution and change of beneficiary form.  Lafayette advised that information it received from Mr. Kohlhaas indicated that Mr. Boghosian did not have authority to act on behalf of Lexico (*see* Exhibit K to Opposition).  The letter concludes in its penultimate paragraph as follows: "Consequently, until Lafayette Life has received an Order from the Denver District Court specifically authorizing an individual or individuals to take action in regard to this policy, we will continue to honor the beneficiary designation set forth in the policy application which names Lexico Resources as 100% beneficiary of the proceeds of the policy." (*Id.* at 2).

By letter dated August 8, 2001, Mr. Boghosian resumed his effort to change the beneficiary of the policy by providing another change of beneficiary form as well as other corporate documents (*see* Exhibit L to Opposition), but the package did not include a Denver District Court order.  On or about November 1, 2001, Mr. Boghosian submitted a transfer of policy ownership form to Lafayette, requesting a change of the

7

ownership of the policy to "U.S. Bank NA as securities intermediary for Living Benefits Owner Trust." (*see* Exhibit M to Opposition). According to the deposition testimony of Ms. Sweet, Mr. Kohlhaas was not advised by Lafayette of the requested transfer of ownership (*see* Exhibit N to Opposition, at pp. 76-77). By letter dated November 9, 2001, Lafayette advised U.S. Bank as intermediary for LBOT that it had recorded the change of ownership of the policy effective October 30, 2001 (*see* Exhibit O to Opposition).

According to Lexico, on October 30, 2001 Mr. Boghosian submitted wire transfer instructions to LBOT requesting a transfer of the "purchase price from the sale of [the Policy]" to a bank account at a Los Angeles branch of Bank of America (*see* Exhibit T to Opposition). As noted above, that request was honored and the amount of $437,000 was transferred. According to Lexico, none of the $437,000 was received by Lexico. Rather, all the proceeds were transferred out of the Bank of America account to other accounts controlled by Boghosian, or other persons working in cooperation with him (Opposition at 6; Exhibit T thereto). Lafayette does not appear to deny the transfer of the funds or its alleged dispersal, although it asserts as an affirmative defense that Lexico "received payment for the Policy on or about November 14, 2001." Final Pretrial Order at 4.

Lexico asserts that after it learned of the transfer of the policy Mr. Kohlhaas made demand on Lafayette to resolve the issues cause by the alleged unauthorized transfer of the policy, but Lafayette did nothing to correct the situation (Opposition at 7, Exhibit W thereto). This lawsuit filed on behalf of Lexico followed.

### III.  DEFENDANT'S MOTION

Lafayette's motion for summary judgment essentially asserts five grounds

seeking the dismissal of all of Lexico's remaining claims.  First, Lafayette argues that

Lexico, as a corporate entity, never authorized the filing of the lawsuit against Lafayette

because the officers that caused the lawsuit to be commenced did not have authority

from the Lexico Board of Directors to file it, and therefore it should be dismissed (Breif

in Support of Motion at 3-4).  This argument rests primarily on an assertion by Lafayette

that the officers of Lexico are collaterally estopped as a result of rulings in three Denver

District Court cases (*id.* 7-11).

Second, Lafayette argues that the policy lapsed before the transfer of ownership

and change of beneficiary in November 2001 due to nonpayment by Lexico of the

premiums, and therefore Lexico forfeited its rights in the policy (*id.* at 4).  Third,

Lafayette argues that Lexico "ratified" the transfer of the policy by failing to act to

rescind the policy, and by now acknowledging that it claims no interest in the ownership

of the policy (*id.* 4-5).  Fourth, Lafayette argues that Lexico suffered no compensable

harm as a result of the transfer because the policy benefits are not payable until the

death of Lex Dolton, who is still alive and therefore no payment is yet due (*id.* at 5).

Finally, Lafayette argues that Lexico's claims are "legally deficient" and that the

negligence claim is barred by the "economic loss" rule (*id.* 22-26).

### IV.  LEXICO'S RESPONSE

As noted above, Lexico has stated that it does not intend to pursue its Second,

Fourth and Fifth Claims for Relief at trial, and agrees that they should be summarily

dismissed (Opposition at 8).  Accordingly, those three claims are DISMISSED with prejudice.

Lexico asserts that the officers who authorized the filing of this lawsuit had authority to do so under the applicable statutes, bylaws or customs of the corporation, that collateral estoppel does not apply to the claims filed in this case, and in any event Lafayette as a third-party has no basis for asserting a lack of corporate authority. Lexico also asserts that the asserted lapse of the Policy due to nonpayment is contrary to the factual positions previously taken by Lafayette.  Lexico contends that it has suffered damages as a result of losing the cash value of the policy.  Finally, Lexico argues that it has established sufficient facts to entitle it to a trial on its claims for breach of contract and promissory estoppel, and that its negligence claim is not barred by the "economic loss" rule.

## IV.  STANDARD OF REVIEW

Defendant's motion is presented as a motion under Rule 56 seeking summary judgment on all claims.  The purpose of a summary judgment motion is to assess whether a trial is necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  In other words, there "must be evidence on which the jury could reasonably find for the plaintiff."  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996).  A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  F.R.Civ.P. 56(c). When applying this standard, a court must view the factual record in the light most

10

favorable to the nonmovant.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912

F.2d 1238, 1241 (10th Cir. 1990).  "[S]ummary judgment will not lie if the dispute about

a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).

## V.  ANALYSIS

For the reasons set forth below, the Court finds that there are disputed issues of

fact that preclude the entry of a summary judgment for Lafayette as to the claims for

breach of contract and promissory estoppel, and that triable issues of fact as to those

claims must be resolved by the trier of fact.  However, the Court agrees that Lexico's

negligence claim should be dismissed.

### A.  Lexico's Authority to Bring this Suit

Lafayette asserts that there are two boards of directors competing for control of

Lexico, one referred to as the Kohlhaas Board and one referred to as the Boghosian

Board (Brief in Support of Motion at 2-3).  Without the need for detailing the

circumstances of how it came about that these two boards are competing for control of

Lexico, Lafayette argues that even if the so-called Kohlhaas Board were the properly

constituted board of directors, this case would be subject to dismissal because a

majority of the Kohlhaas Board has not authorized this suit.  Lafayette asserts that at

most only two members of the four-person Kohlhaas Board "believe the claims against

Lafayette are well founded."  (Brief in Support of Motion at 3-4).  Lafayette's position

rests primarily, if not entirely, on three decisions rendered in the Denver District Court

in other lawsuits initiated by the so-called Kohlhaas Board (*id.* at 7-9), and an assertion that collateral estoppel precludes the instant case (*id.* at 9-11).

In a case captioned *Lexico Resouces International Corp. v. Boghosian*, *et al.*, No. 00 CV 5608 (Denver Dist. Ct.), Judge McMullen entered an order on December 21, 2000, apparently ruling on several pending motions in that case (*see* Exhibit A-6 to Brief in Support of Motion).   Neither party has provided this Court with the complaint in that case so that it is not clear exactly what claims were brought by Lexico against Mr. Boghosian, but it is apparent from the context of the order that the dispute involved the internal corporate affairs of Lexico, including the above-described shareholder meeting of July 2000 and the disputed election of directors at that meeting (*see* Exhibit A-6 to Brief in Support of Motion at 1).   The ruling on which Lafayette relies in the instant case is Judge McMullen's ruling on the motion to dismiss the case before him on the grounds that Mr. Kohlhaas did not have authority to bring the action pending before Judge McMullen (*id.* at 2).   Judge McMullen described the motion as one "to dismiss **this** action on the ground that Charles A. Kohlhaas lacked authority to bring **this** action on behalf of the plaintiff corporation" (*id.*, emphasis added).   In entering his ruling Judge McMullen found that "Mr. Kohlhaas did not have authority to file **this** action on behalf of the corporation." (*id.* at 4) (emphasis added).   Judge McMullen's ruling appears to rely on his finding that Mr. Kohlhaas, as President of Lexico, did not have authority to commence the lawsuit against Mr, Boghosian because he was not so authorized by the Lexico Board of Directors to file the case.   In reaching his conclusion, Judge McMullen considered the Lexico articles of incorporation, bylaws, corporate

12

practices and the law of the State of Nevada.  This Court undertakes the same review in analyzing Lafayette's motion in the present case, but under the circumstances of the present case reaches a different result than Judge McMullen.

The Court agrees with Judge McMullen that the Nevada statutes do not expressly provide that the president of a corporation has the power to commence lawsuits on behalf of the corporation.  N.R.S. § 78.130 sets forth the requirement that a corporation have a president, who must have certain qualifications, but contains no specification as to the powers or duties of the corporation president other than to state that they "have such powers and duties as may be prescribed by the bylaws or determined by the board of directors."  Judge McMullen correctly noted that the Lexico Articles of Incorporation provide for the office of president but do not expressly delineate his powers or authority. (*see* Exhibit Z to Opposition).

The bylaws of Lexico (*id.* at 10), however, do provide that the president, subject to the direction and supervision of the Chairman of the Board of the company and the Board of Directors, "shall have general charge of the business, affairs and property of the corporation . . ." and "shall do and perform such other powers as these Bylaws or the Board of Directors from time to time may assign to him" (Exhibit Z to Opposition). While Judge McMullen found that this provision allowed the president of Lexico, without further authorization from the board of directors, to transact all acts of an ordinary nature which are incident to his office by usage or necessity (*see* Exhibit A-6 to Brief in Support of Motion at 4), he did not find that the provision permitted Mr.

Kohlhaas to file that lawsuit against Boghosian.[1]

The Court finds that the circumstances of the instant case are different, however, for this lawsuit is not an intracorporate dispute over control of the corporation among shareholders, directors or officers, where corporate resources may not properly be used absent actual authority.  Rather, the Court perceives the instant suit against Lafayette as an attempt by Lexico to protect corporate property in the form of the Dolton life insurance policy, or at least to recover damages for the alleged improper transfer of the corporate asset without consideration being received by the corporation.  Such a suit is within the bylaw provision giving the president "general charge of the business, affairs and property of the corporation."

In addition, the Nevada statutes appear to preclude Lafayette, as a third-party, from asserting in this case that the actions of the Lexico officer in bringing this suit were not authorized.  N.R.S. § 78.135(2) provides: "No limitation upon the business, purposes or powers of the corporation or upon the powers of the stockholders, officers or directors, or the manner of exercise of such powers, contained in or implied by the articles may be asserted as between the corporation or any stockholder and any third person."  At least one court applying Nevada law has stated that this statutory provision renders "doubtful that the third-party creditors could, in most of these instances, have

---

[1] The other two Denver District Court decisions upon which Lafayette relies do not add any support to its argument.  The decision by Judge Phillips in *Lexico v. Hachador Holdings, Ltd.,* No. 03 CV 3534 (Denver Dist. Ct.)(Exhibit A-7 to Lafayette's Motion) simply adopts Judge McMullen's reasoning.  The decision in *Lexico v. Dolton,* No. 00 CV 2940 (Denver Dist Ct.) (Exhibit A-5 to Lafayette's Motion) contains no explanation of how the result of that order was reached.

14

raised irregularities between the handling of corporate affairs and the provisions of the applicable articles of incorporation or bylaws." *Matter of Twin Lakes Village, Inc.,* 2 B.R. 532, 541 n.3 (Bankr. D. Nev. 1980).

The Court's understanding of the above statutory provision, together with the above statement from the District of Nevada Bankruptcy Court that appears to have construed it, strongly suggest that Lafayette as a third-party to the internal Lexico corporate dispute may not assert the Kohlhaas Board's purported lack of authority as grounds for dismissal of this suit. Moreover, as Lafayette correctly states, collateral estoppel only bars relitigation of an issue when the issue is identical to one actually and necessarily adjudicated in a prior proceeding, citing to *City and County of Denver v. Block 173 Associates*, 814 P.2d 824, 831 (Colo. 1991). This Court finds that the issue of the corporation's authority to sue in the present case is sufficiently distinct from the issue that was before Judge McMullen such that collateral estoppel may not be used by Lafayette to preclude Lexico from bringing this case against it.

### B. The Alleged Lapse of the Policy

Lafayette argues that this case must be dismissed because all of Lexico's claims "arise from the Policy," and due to nonpayment of the October 2001 premium, any rights Lexico had in the Policy "were forfeited by its failure to pay the premiums due" and the Policy lapsed "as of October 1, 2001." (Brief in Support of Motion at 15-16).

Lexico responds that communications from Lafayette subsequent to October 1, 2001 provide factual refutation for the argument that the Policy lapsed. Citing to letters described as "verifications of coverage" dated November 13, 2001 and May 23, 2002,

15

Lexico argues that Lafayette's position that the Policy lapsed is belied by its own letters (Exhibits DD and EE to Opposition). Exhibit DD appears to be a request, submitted by LBOT to Lafayette on or about November 13, 2001, requesting verification of the Policy coverage, but it is unclear to the Court whether the form was in fact "verified" by Lafayette as the signature on the last page does not identify the signatory's position. *See* Exhibit DD at 4. The Court notes that the form describes both the owner and beneficiary of the Policy as Lexico. *Id.* at 1-2. Exhibit EE, on the other hand, appears to be a form request for verification from an entity called the Medical Escrow Society that is signed and dated on May 23, 2002 by an officer or representative of Lafayette, indicating that coverage under the Policy has not lapsed or been reinstated within the prior two years. *See* Exhibit EE at 2. The form indicates that the owner and beneficiary of the policy is US Bank as intermediary for LBOT. *Id.*

In its reply brief, Lafayette argues that the above referenced documents were issued only after LBOT had paid the overdue premium and the Policy was reinstated. (Lafayette's Reply at 5). Although this argument appears to be contradicted by the express statement in Exhibit EE that the Policy had not lapsed, Lafayette nonetheless argues that Lexico may not benefit from the reinstatement effected by LBOT, and that as of November 1, 2001, the Policy had lapsed. Alternatively, Lafayette argues that even if Lexico could benefit from the reinstatement, accepting that benefit constitutes a "ratification" of the transaction, and thus Lexico claim's are subject to dismissal as it ratified then the transaction it now seeks to challenge. *Id.* at 5-6.

Separate and apart from the apparent factual disputes lurking in these

16

documents, the Court finds that Lafayette's argument that Lexico's claims in this case are barred by the lapse of the Policy is unpersuasive for another reason. The undisputed facts state that on November 9, 2001, Lafayette transferred ownership of the Policy and changed the beneficiary from Lexico to US Bank (Final Pretrial Order at 10).  November 9, 2001 is subsequent to the date that Lafayette claims the Policy lapsed due to nonpayment of the premium.  Lafayette expressly took the position that the only party that had the right to direct the change in ownership and beneficiary was Lexico, as clearly stated in Ms. Sweet's letters of October 16, 2000 and November 13, 2000.  Thus, whatever change Lafayette made in the ownership and beneficiary designation on November 9, 2001 had to be made at the behest of Lexico, at least from Lafayette's perspective.

Thus, for Lafayette to state as it does in its motion, that this case must be dismissed because all of Lexico's claims "arise from the Policy," and due to non-payment of the October 2001 premium, any rights Lexico had in the Policy "were forfeited by its failure to pay the premiums due" and the Policy lapsed "as of October 1, 2001" is simply not supported by the arguable facts of record or Lafayette's conduct. Thus the Court finds that summary judgment may not be properly granted on the ground that the Policy lapsed as of October 1, 2001.

### C.  Whether Lexico "Ratified" the Transfer of the Policy

Lafayette further asserts that Lexico's ratification of the transfer of the Policy to LBOT precludes its claims against Lafayette in this case.  Lafayette argues the ratification occurred either when Lexico failed to seek rescission of the transfer, or

17

when it admitted to the Court in January 2006, that LBOT is the owner of the Policy (Brief in Support of Motion at 17-20).

Lexico's response does not submit an express response to Lafayette's argument on ratification. Nonetheless, the Court cannot agree based on the present factual record that Lexico's claims are barred by an act of ratification of the transfer of the policy.

As Lafayette correctly argues, a principal can indicate an intent to ratify an unauthorized act of an agent by express statements or instruments, or by conduct, as stated in *Stone v. First Wyoming Bank*, *N.A. Lusk*, 625 F. 2d 332, 344 (10th Cir. 1980). But that case also states that ratification requires "proof that the principal had full and complete knowledge of all the material facts of the transactions, and in addition thereto that the principal intended to ratify the acts and transactions of his agent." *Id.* It is not clear that here Lexico knew in January 2002 that as a result of the transfer in ownership and change of beneficiary $437,000 had been transferred to accounts controlled by Mr. Boghosian and subsequently disbursed to his associates.

Moreover, even if Lexico did know of the money transfer, the Colorado law cited by Lafayette provides that ratification also depends on the principal "accepting the benefits" of the ratified transaction. *Hauser v. Rose Health Care Systems*, 857 P.2d 524, 529 (Colo. App. 1993). Here, the facts are at best disputed whether Lexico received any benefits as a result of the transfer of ownership and change of beneficiary, and thus it cannot be said with any certainty that Lexico accepted the "benefits" of the transaction it is claimed to have ratified. Accordingly, the Court finds

18

no basis for granting summary judgment on the ratification argument.

### D.  Whether Lexico was Damaged

Lafayette argues that Lexico has suffered no damages as a result of the alleged unauthorized transfer of ownership and change of beneficiary because Mr. Dolton is still living and the Policy benefits have not yet come due (Brief in Support of Motion at 20-21).  As Lexico points out in its Opposition, the damages it seeks in this case are not the Policy benefit, but rather the value of the Policy at the time it was allegedly wrongfully transferred to LBOT, which paid $437,000 for the right to become the owner and beneficiary.  If the transfer of corporate property was unauthorized, as Lexico claims, and the company's property had a value of $437,000 at the time it was improperly transferred, then Lexico arguably suffered damages in that amount.

Lafayette further asserts that Lexico's only appropriate remedy in this situation was to seek a rescission of the transfer, and a declaration that it is the proper owner so that in the event the Policy benefits are eventually paid, they would be paid to Lexico. (Brief in Support of Motion at 21).  However, Lafayette cites no authority for this proposition and the Court declines to rely on this argument as a basis for summary judgment.

### E.  Whether Lexico Set Forth Viable Claims

Finally, Lafayette argues that all six of Lexico's claims are legally deficient and must be dismissed (Lafayette Motion at 22).  As noted above, Lexico has voluntarily withdrawn its Second, Fifth and Sixth Claims, thus only the claims for breach of contract, negligence and promissory estoppel remain.

19

### 1.  Breach of contract claim

Lafayette argues the breach of contract claim is subject to dismissal because it has not failed to make a payment of the benefits under the policy (Lafayette's Motion at 22).  As set forth in Lexico's opposition, however, the claims for breach of contract and bad faith breach of contract are based on Lafayette's alleged breach of the provisions of Sections 7.1 and 7.2 of the Policy which, respectively, contain provisions for the "rights of ownership" and "transfer of ownership." (*See* Exhibit A-1 to Lafayette's Motion, described as a "specimen policy").

Section 7.1 provides that the policy belongs to the owner and that all rights granted by the policy may be exercised only by the owner during the insured's lifetime. *Id.* at 10.   There is no dispute that Lexico was the owner of the Policy, at least until November 9, 2001, when Lafayette changed the ownership.  (*See* Final Pretrial Order at 10.  Section 7.2 of the Policy provides that the owner may transfer ownership of the policy on forms provided by Lafayette.  *Id.*  As described above, the relevant form was provided, but whether it was submitted with the authorization of the owner, Lexico, certainly is a matter of disputed fact.  Even though Lafayette recognized the disputed nature of the requested transfer of ownership as indicated by the correspondence from Ms. Sweet, and stated that no transfer would be made without a court order, it nonetheless made the transfer as requested by Mr. Boghosian.  Whether or not the transfer was proper is a hotly disputed question of material fact and summary judgment thus does not lie on the breach of contract claim.

### 2.  Lexico's promissory estoppel claim

Lexico's promissory estoppel claim is premised on the statements contained in Ms. Sweet's letters representing that Lafayette would not transfer the Policy absent a court order specifically authorizing an individual or individuals to take action in regard to the Policy (Complaint ¶ 58).  Lafayette asserts that summary judgment should be granted on this claim because Lexico can make no showing that it relied on these statements to its detriment (Brief in Support of Motion at 25-26).  Lexico simply responds that but for Lafayette's promise, it "could have and would have undertaken to prevent the transfer of its Policy." (Opposition at 19).  In support of this assertion, Lexico submits an affidavit from Mr. Kohlhaas in which he avers that had Lafayette advised him that it intended to transfer ownership of the Policy, rather than following the statements contained in Ms. Sweet's letters, he would have immediately advised Lafayette to "not transfer the Policy or take any instruction from Mr. Boghosian" and would have "discussed with legal counsel taking appropriate legal action to prevent the transfer."  (Exhibit D to Opposition at ¶ 13).

Although Mr. Kohlhaas asserts that he would have taken some action in an attempt to prevent the transfer of the Policy by consulting with legal counsel, he does not expressly aver what steps he might have taken.  The Court, however, presumes that Lexico, had it known that transfer of the Policy was imminent, could have sought injunctive relief against the transfer.  Neither party has cited any authority as to whether the forbearance from seeking an injunction could constitute detrimental reliance under a theory of promissory estoppel.  However, for purposes of the present motion, the Court must accept Lexico's representation that it would have taken some action to

prevent transfer of the Policy.  As stated in *Beal Corp. Liquidating Trust v. Valleylab, Inc.*, 927 F. Supp. 1350, 1365 (D. Colo. 1996) where a complaint sufficiently alleges a promise, reliance, and detriment, it states a claim for promissory estoppel upon which relief can be granted.  Whether or not the asserted reliance was reasonable or justifiable is a question of fact.  *Id.* at 1373.

Here, although Lexico's claim for promissory estoppel seems unnecessary in light of its breach of contract claim, as reasonable factfinder might be able to find that the statements contained in Ms. Sweet's letters contained promises by Lafayette in addition to those expressly contained in the Policy regarding transfer of ownership of the Policy or change in the designation of beneficiary.  Accordingly, the Court cannot necessarily find at this juncture inconsistency between the pleading of a breach of contract and a claim for promissory estoppel.  Summary judgment does not lie on the promissory estoppel claim.

### 3. *Lexico's negligence claim*

Lafayette argues that Lexico's negligence claim must be dismissed as a matter of law because Lexico seeks only economic damages for the alleged negligence, and under the so-called "economic loss" rule, a party can not recover damages for a tort, such as negligence, that are also the subject of a claim for breach of contract (Brief in Support Motion at 23).  Lexico first responds that its negligence claim is premised on a duty owed to it by Lafayette "outside of the Policy to act reasonably and diligently to safeguard Lexico's Policy." (Opposition at 18).  Lexico also appears to argue that the negligence claim is pled as an alternative to its breach of contract claim (*id.*).

Every contract has an implied duty upon the parties to act diligently in carrying out the contract, and the Court does not find persuasive Lexico's argument that Lafayette had some independent duty to be diligent in protecting Lexico's contract rights. Accordingly, there is no separate basis for Lexico's negligence claim and it essentially is the same as its claim for recovery under the contract. The "economic loss" rule precludes an overlapping negligence claim in these circumstances involving an insurer's duties under an insurance policy contact. *See Alma v. AZCO Constr. Inc.*, 10 P.3d 1256, 1264 (Colo. 2000); *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269-71 (Colo. 2000). The assertion by Lexico that this claim is pled in the alternative does not save the claim as the Court finds there is no separate duty upon which that tort negligence claim can be premised. Accordingly, Lafayette's motion is GRANTED as to the negligence claim contained in Lexico's Third Claim for Relief.

**CONCLUSION**

For the reasons set forth above, Lafayette's Motion for Summary Judgment (Dkt. # 245) is DENIED as to Lexico's First and Fifth Claims for Relief. The Motion is GRANTED as to the Third Claim for Relief, and that claim is DISMISSED with prejudice. Pursuant to Lexico's concession in its Opposition at 8, its Second, Fourth and Fifth Claims for Relief are DISMISSED with prejudice.

DATED: April 27, 2006

BY THE COURT:

*s: Phillip S. Figa*
Phillip S. Figa
United States District Judge

23